**UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

_____

**No. 97-60316**
_____


**UNITED STATES OF AMERICA,**

**Plaintiff-Appellee,**

**versus**

**ZEB BAUCUM and MARLAN BAUCUM,**

**Defendants-Appellants.**

_____

Appeals from the United States District Court
for the Southern District of Mississippi
_____

June 4, 1998

Before WISDOM, HIGGINBOTHAM, and JONES, Circuit Judges.

EDITH H. JONES, Circuit Judge:[*]

Brothers Zeb and Marlan Baucum were charged in a nine count indictment with various offenses involving check kiting and bank fraud used to prop up their business. They were charged in count 1 with bank fraud in violation of 18 U.S.C. § 1344 and in count 2 with making material false statements to a federally-

_____

[*] Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

insured bank in violation of 18 U.S.C. § 1014. Marlan alone was charged in counts 3 to 6 with making additional false statements to federally-insured banks (in violation of § 1014) and in counts 7 to 9 with wire fraud in violation of 18 U.S.C. § 1343. The defendants were convicted on all counts. They appeal on several points, but finding none persuasive, we affirm.

The indictments arose from the brothers' operation of a medical waste disposal company, River Bay Corporation ("River Bay"). Marlan owned the company, and Zeb helped run it. For a variety of reasons, expenses at the rapidly growing company far exceeded income. In 1993, the brothers and their banker, Joe Moss, president of the Bank of Raleigh, kited a series of checks among seven different accounts at four different banks and used false financial statements to obtain credit and loans from various banks. Moss pled guilty to bank fraud in another proceeding and testified against Marlan and Zeb.

At trial, the brothers did not dispute that a check kiting scheme took place. Rather, they based their defense on the theory that Moss had them unknowingly write bad checks and that they did not know this constituted illegal check kiting. Similarly, the brothers did not dispute that false financial statements were submitted to various banks in an effort to obtain loans. Rather, they based their defense on the theory that the statements were submitted by other people and that they had no knowledge of the errors.

## I. Double Jeopardy  (Marlan & Zeb)

Marlan and Zeb contend for the first time on appeal that they were sentenced to multiple prison terms for acts constituting one offense in violation of the double jeopardy clause of the Fifth Amendment.  Specifically, they allege that their sentences for counts 1 (§ 1344) and 2 through 6 (§ 1014) inflict multiple punishments for the same crime.[2]

The double jeopardy clause prevents a defendant from serving multiple sentences for the same offense. *See United States v. Munoz-Romo*, 947 F.2d 170, 174 (5th Cir. 1991); *United States v. Bradsby*, 628 F.2d 901, 905-06 (5th Cir. Unit A 1980).  A defendant may object to multiple sentences on appeal even if he failed to object in the district court or waived his right to challenge the underlying multiplicitous indictment. *See Munoz-Romo*, 947 F.2d at 174; *United States v. Marroquin*, 885 F.2d 1240, 1245 (5th Cir. 1989).  If the multiple sentences are to be served concurrently, however, the defendant may not raise a multiplicity claim if it was

---

[2]     Because neither Marlan nor Zeb filed a motion to dismiss their indictment pursuant to Federal Rule of Criminal Procedure 12(b)(2) in the district court on the ground of multiplicity, they have waived any right to challenge their convictions based on a defective indictment. *See United States v. Munoz-Romo*, 947 F.2d 170, 174 (5th Cir. 1991); *United States v. Marroquin*, 885 F.2d 1240, 1245 (5th Cir. 1989).  "Multiplicity" is charging a single offense in more than one count. *See United States v. De La Torre*, 634 F.2d 792, 794 (5th Cir. 1981).

not raised prior to trial. *See id*. Marlan's and Zeb's prison sentences are to run concurrently, but because independent monetary assessments were imposed on the defendants for each count of conviction, their sentences are not concurrent for purposes of applying a double jeopardy analysis. *See id.* (citing *Ray v. United States*, 107 S. Ct. 2093, 2093-94 (1987)).

As this court has previously held, sentences imposed for bank fraud under § 1344 and making false statements to a federally, insured bank under § 1014 are not multiplicitous. *See United States v. Dupre*, 117 F.3d 810, 818 (5th Cir. 1997); *United States v. Henderson*, 19 F.3d 917, 926 (5th Cir. 1994). With one exception, our sister circuits who have addressed this issue are in agreement with this court's conclusion. *See United States v. Fraza*, 106 F.3d 1050, 1053-54 (1st Cir. 1997); *United States v. Nash*, 115 F.3d 1431, 1437 (9th Cir. 1994). *But see United States v. Seda*, 978 F.2d 779, 780-82 (2d Cir. 1992) (holding that § 1344 and § 1014 are multiplicitous when they arise from the same offense). Even if there were some latitude in this court's caselaw, which there does not seem to be, we would comfortably affirm these convictions because the facts from which each count in the indictment arises are not the same. Count 1 charged both defendants with a check kiting scheme involving four banks and fraudulent letters of credit. Counts 2 to 6 charged that one or both defendants made false statements to three banks, only one of

4

which is a bank named in Count 1, to induce them to make loans. Consequently, Marlan's and Zeb's sentences under § 1344 and § 1014 do not violate the double jeopardy clause of the Constitution.

## II.  Sufficiency of the Evidence

When reviewing the sufficiency of the evidence supporting a conviction, we view the evidence in the light most favorable to the government.  *See United States v. Stephens*, 779 F.2d 232, 235 (5th Cir. 1985).  We resolve all conflicts in the evidence in favor of the government, and we give the government the benefit of every inference that might reasonably be made from the evidence.  *See id.* The conviction must be upheld if a reasonable trier of fact could have found that the evidence established guilt beyond a reasonable doubt.  *See United States v. Bell*, 678 F.2d 547, 549 (5th Cir. 1982) (en banc).

### A.  Count 1 (Marlan)

Marlan challenges the sufficiency of the evidence for his conviction for bank fraud in violation of 18 U.S.C. § 1344.  A conviction under § 1344 requires proof of three elements: (1) the defendant executed or attempted to execute a scheme or artifice to defraud (2) a federally, insured financial institution, and that (3) the defendant acted knowingly.  *See United States v. Harvard*, 103 F.3d 412, 421 (5th Cir. 1997).  Marlan essentially argues that there is no credible evidence that he knew that the letters of credit issued on behalf of River Bay to obtain loans to conceal the

5

check kiting scheme were fraudulent, because Moss's testimony against him was completely untrustworthy while his testimony was unequivocal and consistent.

Moss testified at trial that in March 1993, when a large overdraft appeared on one of River Bay's accounts, he told Marlan that this was an illegal check kite. He stated that Marlan disputed this point. According to Moss, Marlan claimed that he did not believe their actions amounted to check kiting and that this belief was confirmed by a former college professor. Moss also testified that he explained to Marlan the Bank of Raleigh's lending limits and that, as a result of these limits, River Bay's letters of credit were unauthorized and fraudulent. Marlan admitted on the stand that his undergraduate major was in finance with an emphasis on banking and that he took courses in banking, business, and accounting at college.

The record reveals sufficient evidence for a reasonable trier of fact to find beyond a reasonable doubt that Marlan acted knowingly. In addition, while Moss's memory lapses may have evidenced untrustworthiness, the jury was entitled to listen to all of the evidence and then make its determination as to who told the truth. *See United States v. Davis*, 752 F.2d 963, 968 (5th Cir. 1985) (stating that it is the "sole province of the jury to weigh the evidence and the credibility of the witnesses").

6

## B. Count 5 (Marlan)

Marlan claims that there was insufficient evidence to prove that his August 17, 1992, personal financial statement was false. The statement was relied upon by Valley Bank to make a loan to River Bay.

The jury heard sufficient evidence regarding the financial condition of River Bay to conclude that the company was not worth $2 million on August 17, 1992, as indicated in Marlan's financial statement. In addition, the evidence showed that Marlan's outstanding loan obligations on August 17, 1992, far exceeded the $4,500 indicated on his financial statement. For instance, Marlan himself testified to numerous loans made to him and River Bay in 1991 and 1992 that do not appear on his financial statement. The jury could clearly conclude beyond a reasonable doubt that Marlan's August 17, 1992, financial statement was false.

## C. Counts 7 to 9 (Marlan)

Counts 7 to 9 concern a wire fraud perpetrated upon Orix Credit Alliance. Marlan alleges that there is insufficient evidence to prove that he sent the May 18, 1993, fax to Orix that contained a false River Bay financial statement upon which Orix relied in extending credit to River Bay.

The fax cover sheet was on River Bay's letterhead and contained Marlan's name as the sender. The fax cover sheet also contained a date stamp imprinted by the fax machine showing that it

7

was sent from "River Bay Corp."  The fax was sent to an Orix salesman at a time when Orix was negotiating with Marlan for an extension of credit, and the salesman named on the fax cover sheet was identified at trial as the salesman who handled the River Bay account.  The false financial statement that was transmitted was identical to the statement delivered to Peoples Bank by River Bay in another transaction.

This evidence supports an inference that Marlan sent the fax in question to Orix.  And even assuming arguendo that a jury could not conclude that Marlan personally sent the fax, he could still have been found guilty as an aider and abettor based on plentiful evidence.  Aiding and abetting "is an alternative charge in every count, whether explicit or implicit, 'and the rule is well-established, both in this circuit and others, that one who has been indicted as a principal may be convicted on evidence showing that he merely aided and abetted the commission of the offense.'" *United States v. Walker*, 621 F.2d 163, 166 (5th Cir. 1980) (quoting *United States v. Bullock*, 451 F.2d 884, 888 (5th Cir. 1971)).

### III.  Counts 3 and 4 (Marlan)

Marlan challenges his convictions under counts 3 and 4 on the ground that the indictment misdated the false financial statement used to renew loans from Sunburst Bank.  The financial statement was actually dated January 31, 1993, but the indictment states that it was dated March 31, 1993.  As a result of the

indictment's misstatement, Marlan asserts that the bank could not have relied on the false financial statement because the loans at issue were renewed on March 10, 1993, prior to the date on which the indictment states the financial statement was prepared.

The government concedes that the indictment misdated the financial statement at issue, but argues that (i) no one objected at trial, (ii) Sunburst Bank's loan renewal documents refer to the January 31, 1993, financial statement, and (iii) James Conway, Sunburst Bank's vice-president, testified at trial that the bank renewed the two loans at issue in part based upon the January 31, 1993, false financial statement. Because the trial proceeded as if the indictment correctly dated the false financial statement as January 31, 1993, no party was prejudiced and there is no error requiring reversal.

## IV.  Good Faith Instruction (Marlan & Zeb)

Both Marlan and Zeb argue that the district court abused its discretion by failing to give a requested good faith instruction for counts 1 and 2. A district court's refusal to give a proposed jury instruction is reviewed for abuse of discretion. *See United States v. St. Gelais*, 952 F.2d 90, 93 (5th Cir. 1992). A district court abuses its discretion only if (1) the requested instruction is substantively correct; (2) the requested instruction is not substantially covered in the charge given to the jury; and (3) it concerns an important point in the trial so that the failure

9

to give it seriously impairs the defendant's ability to effectively present a particular defense. *See id*. Under this test, a district court does not abuse its discretion if the instructions given fairly and adequately cover the issues presented by the case. *See id.*

"[T]he failure to instruct [a jury] on good faith is not fatal when the jury is given a detailed instruction on specific intent and the defendant had the opportunity to argue good faith to the jury." *Id.* (quoting *United States v. Rochester*, 898 F.2d 971, 978 (5th Cir. 1990)); *see also United States v. Luffred*, 911 F.2d 1011, 1016 (5th Cir. 1990) ("When the court instructs the jury as to the government's burden of proving that the defendant's conduct was willful and then properly defines that term, it adequately conveys the concept of the good faith defense."). The jury charge contained definitions of "intent," "willful," and "knowing" that adequately conveyed to the jury the concept of a good faith defense. *Cf. St. Gelais*, 952 F.2d at 94 ("Thus, the concept of good faith was adequately conveyed to the jury and the district court's refusal to include a specific instruction is not reversible error.").

In addition, the district court's decision not to include a good faith instruction is not reversible error because counsel for both Marlan and Zeb raised the good faith defense in their closing arguments. *Cf. id.* (holding that even though "defense

10

counsel did not mention the words 'good faith' in his closing argument, his remarks put the concept of good faith and innocent motive before the jury", rendering the district court's refusal to give a good faith instruction nonreversible). Counsel for both Marlan and Zeb argued to the jury that their clients were innocent pawns in a criminal scheme orchestrated by Moss. They both sought to convince the jury that their clients were honest men seeking to build a business who were manipulated by their banker, Moss, into unknowingly performing financial transactions that were illegal. The concept of a good faith defense was squarely presented to the jury on behalf of both Marlan and Zeb. In sum, the district court did not commit reversible error by refusing to include a specific good faith instruction in the jury charge.

## IV. Appointment of an Expert Witness (Zeb)

Zeb argues that the district court erred in refusing to appoint for him an expert witness in the field of banking. We review a district court's refusal to appoint an expert witness for an indigent under 18 U.S.C. § 3006A for abuse of discretion. *See United States v. Williams*, 998 F.2d 258, 263 n.10 (5th Cir. 1993).

At Zeb's request, the district court appointed for him a second defense attorney, Jane Hicks, who was well versed in banking and securities transactions. Zeb's defense rested not on the contention that a check kiting scheme did not take place, but rather that the scheme was run by Moss without Zeb's knowledge.

11

That is to say, Zeb's defense did not involve a technical attack upon the falsity of the government's alleged check kiting scheme where an expert witness might be needed.  Because Zeb was appointed additional trial counsel knowledgeable in the area of finance and because his defense was not based on the theory that no check kiting scheme took place, the district court did not abuse its discretion in refusing to appoint an expert witness for Zeb.

### V.  Government Exhibit G-28 (Marlan & Zeb)

Marlan and Zeb argue that Government Exhibit G-28, a series of pie charts illustrating the seven accounts involved in the check kiting scheme, is misleading because (1) it implies that the defendants put the victim banks at risk of losing $20 million, the total amount of all checks——good and bad——that moved between the seven accounts in question, and (2) the pie chart for each account is the same size when, in fact, the amounts deposited into accounts controlled by Zeb were significantly less than those made into accounts controlled by Marlan.  We review an evidentiary ruling of a district court for abuse of discretion. *See United States v. Capote-Capote*, 946 F.2d 1100, 1105 (5th Cir. 1991).  If an abuse of discretion is found, we review for harmless error. *See id.*

The direct examination of FBI Agent Dave Clark, the government witness who testified regarding exhibit G-28, specifically addressed the perceived "misleading" aspects of the

12

exhibit. Agent Clark explained (1) that the $20 million figure did not represent the amount lost by the banks, but rather the total amount of deposits that went into the seven accounts in question, and (2) that although the pie charts were the same size, the actual account balances were different as indicated by the numbers accompanying each chart. In addition, defense counsel had ample opportunity on cross-examination to question Agent Clark regarding the alleged flaws in exhibit G-28. Because any perceived misleading characteristics of exhibit G-28 were or could have been cleared-up on direct or cross-examination, the district court did not abuse its discretion in admitting the exhibit.

### VI. Government's Failure to Disclose Witness's Prior Conviction (Marlan & Zeb)

Marlan and Zeb argue that the government violated their rights under *Brady v. Maryland*, 83 S. Ct. 1194 (1963), by failing to disclose a prior criminal conviction of a government witness, James Whitehead.

*Brady* and *Giglio v. United States*, 92 S. Ct. 763 (1972), hold that the Constitution forbids the government from suppressing evidence that would tend to exculpate the defendant or that would be useful to the defense for impeaching witnesses who testify against the accused. *See United States v. Williams*, 998 F.2d 258, 269 n.25 (5th Cir. 1993). Suppression of such evidence, however, requires reversal of a defendant's conviction only if "there is a reasonable probability that, had the evidence been disclosed to the

13

defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *See id.* (quoting *United States v. Bagley*, 105 S. Ct. 3375, 3383 (1985)); *see also Giglio*, 92 S. Ct. at 766.

In this case, although the government failed to disclose Whitehead's prior conviction,[3] the defense discovered the information prior to the end of trial. The district court denied the defendant's motion to introduce the prior conviction under Federal Rule of Evidence 609(b). The conviction was over ten years old at the time of trial, and the court found that its introduction was barred by the express language of Rule 609(b), which requires that the proponent provide advance written notice to the adverse party of its intent to use such evidence. The district court also alluded to, but did not base his evidentiary ruling upon, his belief that the probative value of the conviction was outweighed by its prejudicial effect, thereby also precluding its admission under Rule 609(b).

Marlan and Zeb do not challenge the district court's evidentiary ruling. Rather, they claim only that the government's failure to reveal Whitehead's prior conviction violated their rights under *Brady*. Under *Brady* and *Giglio*, the defendants were

---

[3]    The government claims that it was unaware of Whitehead's 12-year-old prior criminal conviction for bank fraud.

14

not prejudiced by the government's failure to disclose because they obtained Whitehead's criminal record prior to the end of trial. In addition, Whitehead's prior conviction was a matter of public record, and the defendants themselves listed Whitehead as a possible witness and interviewed him before trial, at which time they could have uncovered the conviction. Because of this, there is no probability at all that the result of the proceeding would have been different had the government disclosed the information. The fact that the district court excluded the evidence is not challenged, and the defense had its opportunity to introduce Whitehead's prior conviction which was denied.

## VII. Conclusion

For the foregoing reasons, Marlan's and Zeb's convictions as to all counts are **AFFIRMED**.